# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### October 6, 2009 Session

## IN RE MUSIC CITY RV, LLC

Rule 23 Certified Question of Law
from the United States Bankruptcy Court
for the Middle District of Tennessee
No. 08-07724-MH3-7

No. M2009-00051-SC-R23-CQ

**FILED**
**FEB 12 2010**
**Clerk of the Courts**

The certified question from the United States Bankruptcy Court for the Middle District of Tennessee that we address in this case is: whether the consignment of a recreational vehicle ("RV") by a consumer to a Tennessee RV dealer for the purpose of selling the RV to a third person is a transaction covered under Tennessee Code Annotated section 47-2-326, a part of Tennessee's version of Article 2 of the Uniform Commercial Code. We answer the certified question in the negative.

**Tenn. Sup. Ct. R. 23 Certified Question of Law**

SHARON G. LEE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

David I. Komisar, Nashville, Tennessee, for the petitioner, Dudley King.

Robert H. Waldschmidt, Nashville, Tennessee, for the respondent, Robert H. Waldschmidt, Trustee.

## OPINION

### Factual and Procedural Background

Petitioner Dudley King and eight other unrelated individuals consigned their RVs for sale on the lot of the debtor, Music City RV, LLC ("MCRV"), an RV dealer. Subsequently, on August 28, 2008, an involuntary Chapter 7 bankruptcy petition was filed in the United States Bankruptcy Court for the Middle District of Tennessee against MCRV. At issue

before the bankruptcy court was whether the consigned RVs on MCRV's lot were the property of the estate. See In re Music City RV, LLC, 2009 WL 77248, at *1 (Bankr. M.D. Tenn. Jan 5, 2009). The parties stipulated the following for the purposes of the hearing on this issue:

(1) MCRV was not primarily engaged in the business of selling consigned vehicles.

(2) MCRV was a merchant as defined under UCC § 9-102(20).

(3) The consignor defendants turned their vehicles over to MCRV for the purposes of consignment and not for some other purpose.

(4) Each vehicle was on the premises at the time of the filing of the bankruptcy.

(5) MCRV performed the services of a consignee.

(6) There was no agreement between any of the consignors and MCRV concerning a designation of the consignment as "sale on approval" or "sale or return."

Id.

None of the consignors filed a UCC-1 financing statement. The Bankruptcy Trustee argues that the rights of the consignors are governed by Article 2 of the Uniform Commercial Code ("UCC") and as such are subordinate to the rights of perfected lien creditors, including the Trustee as a judicial lien creditor under 11 U.S.C. § 544. Mr. King argues that because the consignment of his RV was a true consignment, not a sale, of a "consumer good" as defined by the UCC, the UCC does not apply and the RV is not a part of the estate.

## Issue

We accepted certification of the following question of law from the United States Bankruptcy Court for the Middle District of Tennessee:

> Whether the consignment of an R.V. by a consumer (not another business) to a Tennessee R.V. dealer, for the purpose of selling that R.V. to a third person, is a transaction covered under § 47-2-326 of the Uniform Commercial Code, as adopted in Tennessee.

2

## Analysis

Of significant import to the determination of this question is the effect of the revision to the UCC, as enacted in Tennessee, that took place in 2001. Prior to 2001, former UCC section 2-326 provided as follows:

> (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:
>
> (a) a "sale on approval" if the goods are delivered primarily for use, and
>
> (b) a "sale or return" if the goods are delivered primarily for resale.
>
> (2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.
>
> (3) *Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum"*. However, this subsection is not applicable if the person making delivery:
>
> (a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or
>
> (b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or
>
> (c) complies with the filing provisions of the chapter on Secured Transactions (chapter 9 of this title).

Tenn. Code Ann. § 47-2-326 (1996 & 2000 Supp.) (emphasis added). It is clear from the italicized portion of the statute above, and the parties agree, that under the former version of the UCC prior to 2001, the consignments at issue here would have been deemed on "sale or return" and the consigned property held to have been part of the bankruptcy estate and subject to claims of creditors.

3

However, effective July 1, 2001, Tennessee Code Annotated section 47-2-326 was amended to delete entirely subsection (3), the provision referring to consignments, resulting in the following version that was effective at all times pertinent to this case:

> (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:
>
> (a) a "sale on approval" if the goods are delivered primarily for use, and
>
> (b) a "sale or return" if the goods are delivered primarily for resale.
>
> (2) Goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.
>
> (3) Any "or return" term of a contract for sale is to be treated as a separate contract for sale within the Statute of Frauds section of this chapter (§ 47-2-201) and as contradicting the sale aspect of the contract within the provisions of this chapter on parol or extrinsic evidence (§ 47-2-202).

Tenn. Code Ann. § 47-2-326 (2001).

Regarding this statutory amendment, the Official Comments to the UCC state that "[c]ertain true consignment transactions were dealt with in former Sections 2-326(3) and 9-114. These provisions have been deleted and have been replaced by new provisions in Article 9. See, e.g., Sections 9-109(a)(4); 9-103(b); 9-319." Tenn. Code Ann. § 47-2-326 (UCC § 2-326) cmt. 4 (2001). Following the 2001 amendment, many consignment transactions came under the governance of Amended Article 9, the article dealing with secured transactions, rather than Article 2, the article dealing with sales. Id.; see also Italian Designer Import Outlet, Inc. v. N.Y. Cent. Mut. Fire Ins. Co., — N.Y.S.2d —, 2009 WL 4016652, at *5 (N.Y. Sup. Nov. 18, 2009); Excel Bank v. Nat'l Bank of Kansas City, 290 S.W. 3d 801, 804-05 (Mo. Ct. App. 2009); In re Haley & Steele, Inc., No. 051617BLS, 2005 WL 3489869, at *2-3 (Mass. Super. Nov. 14, 2005).

Revised Article 9, however, does not define "consignments" so broadly as to include all true consignment transactions; it includes several exceptions, including consignments of goods that are "consumer goods" immediately before delivery:

4

"Consignment" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:

(A) the merchant:

(i) deals in goods of that kind under a name other than the name of the person making delivery;

(ii) is not an auctioneer; and

(iii) is not generally known by its creditors to be substantially engaged in selling the goods of others;

(B) with respect to each delivery, the aggregate value of the goods is one thousand dollars ($1,000) or more at the time of delivery;

(C) *the goods are not consumer goods immediately before delivery*; and

(D) the transaction does not create a security interest that secures an obligation.

Tenn. Code Ann. § 47-9-102(a)(20) (2001 & Supp. 2009) (emphasis added). In the case at bar, the parties agree that Article 9 does not apply because the consigned RVs were "consumer goods," defined by the UCC as "goods that are used or bought for use primarily for personal, family, or household purposes." Tenn. Code Ann. § 47-9-102(a)(23)(2001 & Supp. 2009), and apparently the bankruptcy court agreed.[1]

Regarding the consignment transactions in the instant case, consignor Mr. King argues that the effect of the 2001 amendment to Tennessee Code Annotated section 47-2-326 was to remove <u>all</u> consignment transactions from the province of Article 2 of the UCC. Accordingly, because the transactions at issue do not fall within Article 9's definition of "consignment," Tennessee Code Annotated section 47-9-102(a)(20), the UCC does not apply and the consignments here are governed by the common law of bailments. The Bankruptcy Trustee argues that the 2001 Amendment did not remove all consignments from Tennessee Code Annotated section 47-2-326. Consequently, those consignment transactions that do not fall within Article 9's definition of "consignment" continue to be governed by Article 2, and each consignment transaction should be deemed a "sale or return" by operation of Tennessee Code Annotated Section 47-2-326 (2001). Our review of the statutory language at issue and

---

[1] In its original order certifying the question to this Court, the bankruptcy court stated, "[t]here is no relevant Tennessee law discussing how consignments that do not fit within the new Article 9 definition should be treated. Do such consignments fall back under Article 2, as argued by the trustee, or do the parties refer to state common law, as argued by the defendant?" In re Music City RV, LLC, 2009 WL 77248, at *2.

5

the Official Comments to the UCC persuades us that Mr. King's position is correct.

The certified question presented requires statutory construction. The primary rule governing our construction of any statute is to ascertain and give effect to the legislature's intent. Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 309 (Tenn. 2008). To that end, we begin by examining the language of the statute. Curtis v. G.E. Capital Modular Space, 155 S.W.3d 877, 881 (Tenn. 2005). In our examination of statutory language, we must presume that the legislature intended that each word be given full effect. Lanier v. Rains, 229 S.W.3d 656, 661 (Tenn. 2007). When the language of a statute is ambiguous in that it is subject to varied interpretations producing contrary results, Walker, 249 S.W.3d at 309, we construe the statute's meaning by examining "the broader statutory scheme, the history of the legislation, or other sources." State v. Sherman, 266 S.W.3d 395, 401 (Tenn. 2008). However, when the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000); see also In re Adoption of A.M.H., 215 S.W.3d 793, 808 (Tenn. 2007) (recognizing that "where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect"). We presume that "the General Assembly is aware of prior enactments and of decisions of the courts when enacting legislation." Carter v. Bell, 279 S.W.3d 560, 564 (Tenn. 2009).

The United States Bankruptcy Court for the Middle District of Tennessee correctly observed that Tennessee courts have not been previously presented with the question certified here. In fact, very few jurisdictions across the country have addressed this issue. A close examination of the statutory language at issue, however, provides the answer.

As an initial matter, we note that Tennessee Code Annotated section 47-2-326 no longer makes reference to consignments, nor does it describe a transaction that could be characterized as a "consignment."[2] A "classic consignment" has been described as a

---

[2] The Trustee argues that because the topic heading in the title to revised section 47-2-326 retains the words "consignment sales," stating "Sale on approval and sale or return – Consignment sales and rights of creditors," revised section 47-2-326 must still apply to certain consignment transactions. We are not persuaded by this argument. The General Assembly, in the public act amending Tennessee's version of the UCC, provided that "[t]he topic headings in this act are for reference purposes only and do not constitute a part of the law enacted hereby." Act of May 17, 2000, ch. 846, § 37(b), 2000 Tenn. Pub. Acts 2402, 2539; see also Tenn. Code Ann. § 1-3-109 (2003) (providing that "[h]eadings to sections in this code . . . shall not be construed as part of the law"). The General Assembly also directed the Tennessee Code Commission to

6

Case 3:08-bk-07724    Doc 146    Filed 02/17/10    Entered 02/17/10 12:47:05    Desc Main
Document      Page 6 of 8

transaction where "the owner of goods delivers possession to a bailee who is also given the power to sell the goods to its customers. Title remains with the consignor until the goods are sold to the ultimate buyer and the consignee is free to return any unsold goods to the consignor." G. Ray Warner, <u>Consigned to Confusion: Consignments Under Revised Article 9</u>, 20 Am. Bankr. Inst. J. 30, 30 (2002) (hereinafter "Warner"). There is no indication on the limited facts presented here that title to the RVs did not remain with the consignors; as noted, the parties stipulated that the consignors "turned their vehicles over to MCRV for the purposes of consignment and not for some other purpose" and that "MCRV performed the services of a consignee."[3]

Further, Tennessee Code Annotated section 47-2-326 expressly applies to situations where "delivered goods may be returned *by the buyer* even though they conform to the contract." (Emphasis added). Subsection (2) of the statute similarly refers to "the buyer" in describing applicable transactions: "(g)oods held on approval are not subject to the claims of *the buyer's* creditors until acceptance; goods held on sale or return are subject to such claims while in *the buyer's* possession." Tenn. Code Ann. § 47-2-326(2) (emphasis added). Article 2 of the UCC as adopted in Tennessee defines "buyer" as "a person who buys or contracts to buy goods." Tenn. Code Ann. § 47-2-103(1)(a)(2001). In this case, there is no indication that MCRV contracted to buy the RVs at issue, but rather, as a consignee, MCRV agreed to take possession and to try to sell them to a third party for a commission. Similarly, there was no "sale" as defined at Tennessee Code Annotated Section 47-2-106(1)(2001) as "the passing of title from the seller to the buyer for a price." MCRV was not a buyer of the RVs, and it consequently follows that Tennessee Code Annotated section 47-2-326 does not apply under the circumstances of this case.

The Official Comments to section 47-2-326 support this conclusion. This Court has observed that "[w]hile not controlling authority, the Official Comments to the UCC provide guidance in construing statutory language and offer assistance in discerning the intent of the

---

"include such descriptive headings in any compilation or publication containing the provisions of the act, and to make any conforming adjustments in other provisions of Title 47, Chapters 1-9 which are amended or revised by the National Commissioner on Uniform State Laws." <u>Id</u>. Although the topic heading for revised section 2-326 of the UCC was amended to delete "consignment sales," Tennessee's version was not similarly amended, probably as a result of the scrivener's oversight or error. In any event, the remaining presence of the words "consignment sales" in the title's topic heading does not change our analysis of the statutory language at issue here.

[3] We note that the certified question, as presented, presumes that the transactions at issue are true consignments, and that there is no indication or argument that any of the transactions actually involved disguised security interests.

7

legislature in adopting the statutory scheme." Wakefield v. Crawley, 6 S.W.3d 442, 447 (Tenn. 1999). The Official Comments state, "[c]ertain true consignment transactions were dealt with in former Sections 2-326(3) and 9-114. *These provisions* have been deleted and have been replaced by new provisions in Article 9." Tenn. Code Ann. § 47-2-326 cmt. 4 (emphasis added). The most natural and reasonable interpretation of these comments is that "these provisions" mentioned in the second sentence refer to those provisions that dealt with the "certain true consignment transactions" previously governed by Article 2, at former Tennessee Code Annotated section 47-2-326(3) (1996 & Supp. 2000). It follows that current Tennessee Code Annotated section 47-2-326 does not apply to consignment transactions. At least two informed commentators and one court addressing the same issue have reached the same conclusion. See Warner, 20 Am. Bankr. Inst. J. 30, 31 (2002) (noting that, following the 2001 revisions, "consignments are no longer subject to Article 2, and its rule that goods on sale-or-return are subject to the claims of creditors no longer applies to them"); Robert M. Lloyd, The New Article 9: Its Impact on Tennessee Law (Part I), 67 Tenn. L. Rev. 125, 165 (1999) (stating that "[w]ith this [2001] change, Article 2 will no longer apply to consignments"); In re Haley & Steele, Inc., 2005 WL 3489869, at *4 (observing that "Sec. 2-326 requires a sale. Title must be delivered to a buyer, which is not what happens when goods pass from a consignor to a consignee" and concluding that "consumer consignments are now governed, once again, by the common law").

## Conclusion

In answering the certified question of law from the United States Bankruptcy Court for the Middle District of Tennessee, we conclude that the consignment of an RV by a consumer (not another business) to a Tennessee RV dealer, for the purpose of selling that RV to a third person, is not a transaction covered under section 47-2-326 of the Uniform Commercial Code, as adopted in Tennessee. Costs of this appeal are assessed to the respondent, Robert H. Waldschmidt, Trustee.

*Sharon G. Lee*

SHARON G. LEE, JUSTICE

I, Michael W. Catalano, Clerk, hereby certify that this is a true and exact copy of the original OPINION filed in the cause.
This 12th day of February, 2010
CLERK OF COURT